UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES ALONZO LEWIS,

        Plaintiff,                Case No. 2:19-cv-183

v.                                        Honorable Paul L. Maloney

UNKNOWN KIENERT et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Hill, Neubecker, Ninnis, Viitala, and Unknown Party #1.

## Discussion

### I.     Factual Allegations

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County,

Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues the following MBP officials: Correctional Officers (unknown) Kienert and (unknown) Hill; Sergeants (unknown) Neubecker and T. Ninnis; Resident Unit Manager (unknown) Viitala; and an unknown nurse (Unknown Party #1).

Plaintiff alleges that, on September 8, 2018, as he was walking by the officers' unit station, he called out to another prisoner, using a raised voice. Defendant Kienert ordered Plaintiff to go to the officers' desk. Kienert loudly stated, "Stop your f*cking screaming down my f*cking hallways." (Compl., ECF No. 1, PageID.4.) Kienert then stood up and yelled, "[D]o I make myself clear?" (*Id.*) Kienert grabbed Plaintiff by the shirt and shoved Plaintiff against the bars in the officers' station, repeating, "[D]o I make myself clear?" (*Id.*) Plaintiff's head hit the bars, and Defendant Kienert mockingly said, "[S]orry about that," while still holding Plaintiff's shirt and shoving him. (*Id.*) Kienert then ordered Plaintiff out of his office. Plaintiff alleges that Defendant Klienert used excessive force against him, in violation of Plaintiff's rights under the Eighth Amendment.

Plaintiff states that he was dazed and temporarily lost consciousness when he hit his head. He developed a lump on his head and suffered neck pain, dizziness, seeing stars, and headaches. On the day of the alleged assault, Plaintiff submitted a health care request, seeking medical attention for neck pain caused by being pushed by Kleinert. Plaintiff was advised on September 14, 2018, that a visit had been scheduled, and he was seen by Defendant unknown nurse on September 17, 2018. The nurse prescribed pain medication. Three days later, on September 20, 2018, Plaintiff again sent a health care request, in which he complained that he was

experiencing more frequent headaches, dizzy spells, and episodes of seeing stars. Plaintiff received no response to his second request.

According to the affidavit attached to Plaintiff's complaint (Ex. E to Compl., ECF No. 1-1, PageID.20-23), Plaintiff told Defendant Sgt. Neubecker about the assault on September 13, 2019. (*Id.*, PageID.21.) Defendant Neubecker advised Plaintiff that she wanted to investigate Plaintiff's allegations. On September 14, 2018, Plaintiff asked Defendant Neubecker if she had investigated the issue, and she stated that she had passed the complaint up the chain of command to a lieutenant. That same date, Plaintiff spoke to Defendant Viitala about the assault. Viitala told Plaintiff that he was investigating another matter, but he told Plaintiff to submit a kite, which Viitala expected to receive the following Monday. Plaintiff sent the kite, but he received no response.

On September 19, 2018, Plaintiff spoke with Defendant Viitala in the prison yard. Plaintiff asked why Viitala had not called Plaintiff out to talk about the kite. Viitala informed Plaintiff that he had never received the kite. As a result, on September 22, 2018, Plaintiff sent another kite to Defendant Viitala. Plaintiff again received no response. In addition, Plaintiff alleges that his family members called the state police and the MBP warden about the assault.

Plaintiff submitted a Step-I grievance dated September 20, 2018, but he contends that he never received a grievance receipt or identification number. Plaintiff also wrote a letter to the grievance coordinator, but he received no response. Plaintiff attaches copies of both the grievance and the letter to his complaint. (*See* Ex. C & D to Compl., ECF No. 1-1, PageID.16, 18.) Plaintiff asserts that the grievance procedure therefore was rendered unavailable to him. However, Plaintiff also attaches to his complaint a copy of a Step-I grievance receipt for a grievance filed on the same issue, which was submitted on September 17, 2018, and received on

September 19, 2018. (Ex. H to Compl., ECF No. 1-1, PageID.33-34.) In addition, Plaintiff attaches a copy of the Step-I grievance response signed by Defendant Ninnis on October 4, 2018. (Ex. G to Compl., ECF No. 1-1, PageID.26-28.) Plaintiff complains that Defendant Ninnis made false statements in the grievance response. Specifically, Plaintiff argues that Defendant Ninnis falsely stated that Plaintiff had denied having evidence to support his allegations and that Defendants Viitala and Neubecker denied that Plaintiff had reported the assault to them. (*Id.*, PageID.28.)

Plaintiff contends that Defendants Neubecker, Ninnis, and Viitala conspired to cover up the assault, retaliated against Plaintiff for filing a grievance by covering up the assault, and violated Plaintiff's right to due process in the grievance proceedings.

Finally, Plaintiff alleges that Defendant Hill violated his right to petition government by ripping up Plaintiff's Step-III grievance response, preventing Plaintiff from attaching the response to his complaint. Plaintiff contends that Defendant Hill's action also was taken in retaliation for Plaintiff having filed a grievance.

Plaintiff seeks nominal, compensatory, and punitive damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Neubecker, Ninnis, & Viitala

Plaintiff alleges that Defendants Neubecker, Ninnis, and Viitala violated his right to due process and, arguably, his right to petition government in the grievance proceeding, either by providing false statements or failing to investigate properly and reach an appropriate decision. In addition, Plaintiff contends that they mishandled his complaints and grievances in retaliation for his filing of the grievances and complaints. Finally, Plaintiff alleges that Defendants conspired to cover up Defendant Kienert's assault.

### 1. failure to properly respond to grievances & complaints

To the extent that Plaintiff alleges that Defendants failed to appropriately handle his grievances and complaints under state law, he fails to state a claim. The failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff alleges that Defendants Neubecker, Ninnis, and Viitala failed to supervise Defendant Kienert or to investigate Plaintiff's grievances and complaints, Plaintiff fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See*

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Neubecker, Ninnis, or Viitala engaged in any active unconstitutional behavior.

In addition, even if he could allege active conduct by Defendants Neubecker, Ninnis, and Viitala, Plaintiff has no due process right to file or successfully pursue a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). "[A] state has no federal due process obligation to follow all of its own grievance procedures . . . ." *Carlton v. Jondreau*, 76 F. App's 642, 644 (6th Cir. 2003). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Further, to the extent that Plaintiff suggests that the Defendants' interference with the processing or resolution of his grievance violated Plaintiff's First Amendment right to petition the government for redress, Plaintiff fails to state a claim. The right to petition under the First Amendment stops the government from generally prohibiting expressions in the form of petitions for redress and from imposing sanctions on one who petitions for redress. *Smith v. Arkansas State*

7

*Highway Emp., Local 1315*, 441 U.S. 463, 464 (1979). In *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999), the Sixth Circuit explained the nature of the right:

> The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). The First Amendment protects Apple's right to petition, but his suit is founded completely on a mistaken reading of that Amendment. A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.

*Apple*, 183 F.3d at 479; *see also BPNC, Inc. v. Taft*, 147 F. App'x 525, 531 (6th Cir. 2005) ("The purpose of the Petition Clause, though, is to ensure that citizens may communicate their will through direct petition to the legislature and government officials."). Thus, Plaintiff has a First Amendment right to file grievances against prison officials, *Herron v. Harrison*, 203 F. 3d 410, 415 (6th Cir. 2000), but the amendment does not require the government to consider, respond to, or grant relief on that grievance.

Moreover, Defendants' failures to properly respond to Plaintiff's grievances and complaints do not support a retaliation claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance, whether oral or written, is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Smith*, 250 F.3d at 1037; *Herron*, 203 F.3d at 415. Plaintiff's allegations therefore meet the first prong of the retaliation claim.

Plaintiff's retaliation claim, however, fails at the second step, because he cannot demonstrate that Defendants Neubecker, Ninnis, or Viitala took adverse action against him. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

The Sixth Circuit routinely has held that interference with or restrictions on the grievance process do not amount to conduct that would deter a person of ordinary firmness from exercising his rights. For example, the court has recognized that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g. Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker*, 128 F. App'x at 446. As the Sixth Circuit has explained, 42 U.S.C. § 1997e(a) requires only that prisoners must exhaust "such administrative remedies as are available" prior to filing suit in federal court. If Defendants take actions to make those remedies unavailable or unsuccessful, Plaintiff may proceed to federal court to pursue his claims, regardless of the result of the grievance proceedings. *See, e.g. Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. 2001) (holding that restrictions on filing grievances do not constitute adverse actions because they do not interfere with a prisoner's access to the courts or his ability to exercise his right to petition government by filing a lawsuit).

9

For all these reasons, Plaintiff fails to state a claim against Defendants Neubecker, Ninnis, and Viitala based on their failures to supervise Defendant Kienert and to take appropriate action on his grievances.

### 2. conspiracy to cover up Defendant Kienert's assault

Plaintiff broadly claims that Defendants Neubecker, Ninnis, and Viitala conspired to cover up Defendant Kienert's assault. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's conspiracy claim fails for several reasons. First, Plaintiff does not identify what federal right Defendants conspired to deprive him of. The Court already has concluded that Plaintiff's allegations against Defendants fail to support any constitutional claim—whether due process, right to petition government, or retaliation. Plaintiff possesses no constitutional interest in the proper and correct resolution of his grievances. As a consequence,

10

whether acting alone or in conspiracy with one another, Defendants did not violate Plaintiff's constitutional rights.

Moreover, Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). The Sixth Circuit repeatedly has applied the doctrine to claims under 42 U.S.C. § 1985(3). *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510). In *Jackson v. City of Cleveland*, 925 F.3d 793, 817-19 (6th Cir. 2019), the Sixth Circuit concluded that the intracorporate conspiracy doctrine applies to claims under § 1983, as well as § 1985. As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Jackson*, 925 F.3d at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436-37 (6th Cir. 2019) (same).

Here, all Defendants are members of the same collective entity (the MDOC) who work at the same divisional location. Plaintiff does not allege, much less show, that Defendants were acting outside the scope of their employment. The "scope of employment" limitation "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson*, 40 F.3d at 840. "The mere 'fact that two or more agents participated in the decision or in the act itself will normally not' suffice to create a conspiracy." *Id.* (quoting *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972)). In addition, "simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal

11

contemplation." *Harris v. Bd. of Educ.*, 798 F. Supp. 1331, 1346 (S.D. Ohio 1992). Instead, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Id.*

Plaintiff alleges no facts suggesting that Defendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties. Plaintiff therefore does not establish the exception to the intracorporate conspiracy doctrine for actions taken outside the scope of employment. As a consequence, Plaintiff's conspiracy claim under § 1983 is barred under the intracorporate conspiracy doctrine.

For these reasons, Plaintiff fails to state a conspiracy claim against Defendants Neubecker, Ninnis, and Viitala.

### B. Defendant Hill

Plaintiff alleges that Defendant Hill ripped up the Step-III response to Plaintiff's grievance, ostensibly in retaliation for Plaintiff having filed the grievance. As the Court previously discussed, to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. In addition, as the Court previously held, the filing of a nonfrivolous prison grievance amounts to protected conduct. *See Maben*, 887 F.3d at 265; *Smith*, 250 F.3d at 1037; *Herron*, 203 F.3d at 415. Plaintiff's allegations therefore meet the first prong of the retaliation claim.

However, Plaintiff's retaliation claim against Defendant Hill, like his claim against Defendants Neubecker, Ninnis, and Viitala, fails at the second step, because he cannot demonstrate that Defendant Hill took adverse action against him. The tearing up of Plaintiff's copy of his Step-III grievance is simply not "*capable* of deterring a person of ordinary firmness" from exercising

12

his protected rights. *Bell*, 308 F.3d at 606 (emphasis in original). While exhaustion of available administrative remedies is required by 42 U.S.C. § 1997e(a), Plaintiff is not required to provide proof of that exhaustion at the time he files his complaint. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). Instead, a prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Id.* As a result, any harm to Plaintiff caused by the destruction of his copy of the grievance form is de minimis, as it has no impact on his ability to pursue his claims and creates no other burden on the conditions of his confinement.

Because he fails to allege facts demonstrating that Defendant Hill's actions were sufficiently adverse, Plaintiff fails to state a retaliation claim against Defendant Hill. Plaintiff makes no other allegations against Defendant Hill. As a consequence, the Court will dismiss Plaintiff's complaint against Defendant Hill.

### C. Defendant Unknown Party #1

Plaintiff sues an unknown MBP nurse (Unknown Party #1). Plaintiff alleges that he filed his first request for medical treatment on September 8, 2018, complaining about a lump on his head and neck pain. He was seen by Defendant Unknown Party #1 on September 17, 2018. Defendant Unknown Party #1 prescribed pain medication for Plaintiff. Plaintiff alleges, "I submitted another Health Care Request on '9/20/18,' describing further injuries I've sustained as a result of being assaulted by C.O. Kienert. . . . I never received any medical attention from Unknown Nurse at MBP . . . ." (Compl., ECF No. 5.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S.

102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

14

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received

15

treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff's allegations against Defendant Unknown Party #1 are limited. He alleges that he filed his first medical request and that Nurse Unknown Party # 1 responded to that request for medical care by seeing him and prescribing him pain medication. The facts, as alleged, do not support a conclusion that Defendant Unknown Party #1 disregarded a substantial risk of serious harm. Defendant Unknown Party #1 saw Plaintiff and gave treatment. Plaintiff has not even argued that the treatment provided by Defendant Unknown Party #1 was inadequate at the time it was given.

In his remaining allegations against Defendant Unknown Party #1, Plaintiff states only that he submitted a medical request three days after he was first seen by Defendant Unknown Party #1 and that no one responded to his request. Plaintiff suggests that Defendant Unknown Party #1 reviewed his request and failed to take action on that request.

The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded

to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.")

Plaintiff utterly fails to allege facts supporting a conclusion that Defendant Unknown Party #1 was the medical provider who received or reviewed the medical request or that Unknown Party #1 disregarded that request. Plaintiff therefore fails to allege sufficient facts to state an Eighth Amendment claim against Defendant Unknown Party #1 arising out of his second request for medical care.

As a consequence, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Unknown Party #1.

### D. Defendant Kienert

Upon initial review, the Court concludes that Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendant Kienert, arising out of Kienert's use of excessive force.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Hill, Neubecker, Ninnis, Viitala, and Unknown Party #1 will be

dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claim against Defendant Kienert remains in the case.

An order consistent with this opinion will be entered.


Dated:   October 30, 2019               /s/ Paul L. Maloney
                                        Paul L. Maloney
                                        United States District Judge