UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES ALONZO LEWIS #324269,                    Case No. 2:19-cv-00183

               Plaintiff,            Hon. Paul L. Maloney
U.S. District Judge

    v.

UNKNOWN KIENERT, et al.,

               Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner James Alonzo Lewis pursuant to 42 U.S.C. § 1983. Lewis alleges that on September 8, 2018, while he was confined at Marquette Branch Prison (MBP), Defendant Corrections Officer Kienert unnecessarily grabbed him and slammed him into some cell bars, in violation of his Eighth Amendment rights.

Defendant Kienert filed a motion for summary judgment due to Lewis's failure to exhaust his administrative remedies. (ECF No. 17.) Lewis has indicated that he will not file a response to Defendant's motion. (ECF No. 30.) The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant the summary judgment motion and dismiss this case.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

---

[1]     Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury.  *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion

procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed

4

to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ P, V.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.  The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130 at ¶¶ T, BB.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ T, FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶¶ T, FF.  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-

grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

## IV. Analysis

Defendant states that "Lewis did not file *any* grievances while incarcerated at MBP, let alone any grievances against Defendant C/O Keinert regarding his claims, as alleged in his Complaint." (ECF No. 24, PageID.136.) In support of this claim, Defendant cites the MDOC Step III Grievance Report on Lewis. (ECF No. 24-3, PageID.148-150.) Defendant's conclusion is not accurate. According to the affidavit laying the foundation for this report, the report lists "prisoner/parolee grievances filed at Step III, which have been responded to at Step III." (*Id.*, PageID.148.) Thus, this report would not document a grievance that is filed at Steps I or II, but not appealed to Step III.

Lewis's complaint asserts that he exhausted his administrative remedies. (ECF No. 1, PageID 6-8.) And in support of this claim, Lewis attached documents associated with what appears to be a grievance he filed at MBP, namely a grievance with identifier MBP 2018-09-1204-26Z.[3] Lewis attached the following grievance documents to his original complaint:

- his Step I grievance against Keinert (ECF No. 1-1, PageID.34),

- a receipt indicating this grievance had been received (*id.*, PageID.33),

- an MBP Step I Grievance Response Supplemental Form (*id.*, PageID.26-28 (indicating that Lewis's Step I grievance had been investigated and denied)), and

---

[3] This identifier number is formatted differently in the various documents listed here.

- his Step II appeal (*id*., PageID.31-32).

Lewis also attached a letter he purportedly wrote to check on the status of his grievance against Defendant.  (*Id*., PageID.18 (purported letter to MBP Grievance Coordinator).)

Although Lewis appears to have filed a grievance against Defendant at MBP, his efforts are not enough to survive summary judgment for three reasons.  First, Lewis did not file a verified complaint that meets the requirements of 28 U.S.C. 1746, and his attachments are not supported by affidavits or declarations establishing their authenticity and laying an evidentiary foundation.  A "verified" complaint carries the same weight as would an affidavit for the purposes of summary judgment.  *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).  But a declaration that does not substantially meet the requirements of Section 1746 may not be relied upon for purposes of responding to a motion for summary judgment.  *See, e.g.*, *Sanford v. Mullins,* No. 1:16-CV-1431, 2019 WL 5006034, at *4 (W.D. Mich. Sept. 23, 2019) (rejecting "homespun" declaration), *report and recommendation adopted,* No. 1:16-CV-1431, 2019 WL 4986101 (W.D. Mich. Oct. 8, 2019); Fed. R. Civ. P 56(c)(1) (setting forth means for supporting a factual position).  Thus, Lewis's complaint and attachments do not provide the Court with evidence that would allow a ruling in his favor.

Second, relatedly, during a telephonic, on-the-record status conference on June 30, 2020, Mr. Lewis indicated that he was not going to file a response to Defendant's summary judgment motion.  (ECF No. 30 (minutes of status conference).)  Thus, the only materials in Lewis's favor relating to the issue of exhaustion are his complaint

and attachments.  Where a non-moving party makes no response to a motion for summary judgment, the Court must ensure that the moving party meets its initial burden before granting the motion.    *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005).

Third, if the Court considered Lewis's attachments for purposes of ruling on the summary judgment motion, those attachments establish only that Lewis pursued his grievance through Step II.  These documents give no indication that he continued on to Step III.  Thus, Lewis did not exhaust his administrative remedies.

For these reasons, the undersigned concludes that the record before the Court fails to establish a genuine issue of material fact regarding exhaustion.  The record shows that Lewis did not exhaust his administrative remedies.

## V.  Recommendation

Accordingly, it is respectfully recommended that this Court grant Defendant's motion for summary judgment (ECF No. 17) and dismiss Defendant Kienert without prejudice from this action.

If the Court accepts this recommendation, this case will be dismissed.


Dated:   July 24, 2020                            /s/ *Maarten Vermaat*
                                                            MAARTEN VERMAAT
                                                            U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P.

72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).